**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Roger McNair, | No. CV-16-03182-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Seven Arts Entertainment Incorporated, et al., | |
| Defendants. | |

Currently before the Court is Defendant's Motion to Dismiss (Doc. 12).[1] Plaintiff filed a Response (Doc. 14), and Defendant filed a Reply thereto (Doc. 15). Defendant moved to dismiss both for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6), claiming that the statute of limitations on Plaintiff's claims has expired.

**I.  Factual Background**

Plaintiff, and Arizona resident, filed his Complaint on September 20, 2016 alleging five causes of action arising out of the same sequence of events. Plaintiff is a hip hop performer and writer professionally known as Rampage. Defendant is an

---

[1] Plaintiff filed two filings related to this motion. In the first (Doc. 11), Plaintiff simply filed a two page document titled "Notice of Motion an Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction [FRCP 12(b)(2)] and for Failure to State a Claim [FRCP 12(b)(6)]; [Proposed] Order of Dismissal]. The filing references an "attached Memorandum of Points and Authorities and Declaration of Peter M. Hoffman," but no such attachment exists. In the second filing (Doc. 12), Plaintiff filed the same two pages contained in Doc. 11 along with the promised attachments.

international multimedia company. Earl Simmons is a non-party hip-hop artist known professionally as DMX. Plaintiff alleges that he is the sole owner of a song called "Solid" that Defendant placed on a DMX album without Plaintiff's permission. Plaintiff further alleges that Defendant declined to comply with a cease and desist request from Plaintiff's counsel.

Plaintiff alleges that he created the song as follows. First, Plaintiff acquired rights to a beat ("Beat") from his producer. Then, Plaintiff wrote words to accompany the Beat ("Lyrics"). Plaintiff then reached out to DMX and "requested that DMX contribute to the song by writing words to the Beat and recording DMX's voice onto the Plaintiff's song." (Doc. 1 at ¶13). Plaintiff refers to DMX's contribution to the song as the "DMX Feature." The DMX Feature was recorded at the Saltmine Studios in Arizona. Plaintiff also added his own voice to the Beat, using the Lyrics.

The resulting track contained the voices of both DMX and Plaintiff. Plaintiff received "the original mixed recording of the song and the session file on a hard drive," which Plaintiff refers to as the "Master," from the Saltmine Studios. (Doc. 1 at ¶17). Plaintiff alleges that he and DMX had an oral agreement under which DMX would contribute the DMX Feature and Plaintiff, in return, would help DMX with lyrics to be used on other songs on which DMX was working. Plaintiff alleges that he and DMX "each fulfilled their respective ends of the bargain." (Doc. 1 at ¶14). Plaintiff does not address who paid the recording studio.

At some point in 2015,[2] Defendant acquired the Master and released it on a DMX album titled Redemption of the Beast (the "Album"). The Album identifies the artist of Solid as "DMX ft. Rampage," even though Plaintiff alleges the song is actually "Rampage ft. DMX." Additionally, Defendant used Plaintiff's name and likeness on a sticker placed on the front of the Album as an advertising tool.

---

[2] Plaintiff does not precisely allege the Album's release date in the Complaint. However, Plaintiff states in his Response that the Album was released on January 13, 2015.

The Complaint does not explain Defendant's acquisition of the Master with ideal clarity. Without connecting "Defendant David Michery"[3] to any individual or entity involved in the creation of the Master, Plaintiff alleges, "Upon information and belief, on or around 2010-2011, Defendant David Michery ('Michery') somehow came into possession of the Master along with approximately 51 other songs featuring DMX ('Michery Music Assets')." (Doc. 1 at ¶18). Plaintiff then alleges that Defendant acquired the Master, as part of a larger acquisition of assets, from Michery. Eventually, Defendant released "Solid" on the Album.

After Plaintiff realized Defendant had released "Solid," Plaintiff's counsel sent Defendant a cease and desist letter.[4] The parties failed to resolve their dispute over "Solid," and this action followed. Plaintiff brings five causes of action against Defendant: Copyright Infringement of Composition, Copyright Infringement of Master, Misappropriation of Common Law Right of Privacy / Right of Publicity, Trademark Infringement / Trade Dress Infringement / False Association, and Negligence.

Defendant moved to dismiss Plaintiff's complaint in its entirety.

## II.   Personal Jurisdiction

### A.   Applicable Law

"Plaintiff[] bear[s] the burden of showing that jurisdiction is proper, but '[w]here, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff[] need only make a prima facie showing of jurisdictional facts." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (quoting *Schwarzenegger v. Fred*

---

[3] David Michery is not listed as a defendant in the caption of the Complaint.

[4] Plaintiff attached a copy of this letter to his Response. (Doc. 14-1). The letter was written by Plaintiff's counsel. Plaintiff's counsel's letterhead lists a California address. On the far right side of the letterhead, the words "los angeles" and "tempe" are printed next to one another. The letter identifies Plaintiff and explains his position that he owns the rights to the Master, but does not state that Plaintiff is an Arizona resident. The letter explains that the Beat was created by an individual or entity in London, England and that the Master was recorded in Arizona at the Saltmine Studios. Other than explaining that the recording was created in Arizona and listing the word "tempe"—which some may recognize as a city in Arizona—the letter makes no further reference to this state.

*Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A). As this Court has previously observed, "Arizona has authorized its courts to exercise jurisdiction to the maximum extent permitted by the Due Process Clause of the Constitution." *Wake Up & Ball LLC v. Sony Music Entm't Inc.*, 119 F. Supp. 3d 944, 947 (D. Ariz. 2015) (citing Ariz. R. Civ. P. 4.2(a)). So, to determine whether this Court is authorized to exercise jurisdiction over the Defendant, it must determine "whether the exercise of jurisdiction comports with the limits imposed by federal due process" on the state of Arizona. *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (internal quotation marks and citation omitted).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 134 S.Ct. at 1121. "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts… such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). There are two types of jurisdiction. "Specific or case-linked jurisdiction depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Id.* at 1121 n.6 (internal quotation marks and citations omitted). General or "all purpose" jurisdiction, on the other hand, "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)." *Id.*

Plaintiff argues that he has sufficiently pled specific jurisdiction over Defendant. The specific jurisdiction inquiry focuses on "the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S.Ct. at 1121 (quoting *Keeton v. Hustler*

*Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*

This connection must arise out of contacts created by the "defendant *himself*." *Walden*, 134 S.Ct. at 1122 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Additionally, the minimum contacts inquiry focuses on the Defendant's contacts with the forum, not his contacts with people who happen to reside in the forum.  *Id.*  Thus, "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.*  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

In the Ninth Circuit, specific jurisdiction may be exercised over a non-resident defendant "only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017).  To determine whether a defendant has purposefully directed its activities at a particular forum, the plaintiff must allege that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the state."  *Wake Up and Ball*, 119 F. Supp. 3d at 948. In order to meet the "express aiming" requirement, Plaintiff must demonstrate "'something more' than mere foreseeability" to justify the assertion of personal jurisdiction of a nonresident defendant.  *Id.* at 949.

. . . .

. . . .

- 5 -

### B.     The Parties' Arguments

Defendant first asserted in its motion that Plaintiff had only attempted to allege "general jurisdiction" over Defendant, and had failed in that effort. Defendant points to a Declaration submitted with the motion of Peter Hoffman, Defendant's CEO. In the Declaration, among other things, Hoffman avers, "All aspects of the negotiation and execution of DMX Agreement and [Defendant]'s acquisition of the Disputed Track… and the delivery and release of the Album occurred in Los Aneles County, California." (Doc. 12-2 at ¶3). In the Declaration, Hoffman also denies that Defendant has any office, presence, employees or contacts in Arizona, and states that Defendant is not qualified to do business in Arizona. Relying on this Declaration and the Supreme Court's decision in *Daimler*, Plaintiff asserts, "this Court has no personal jurisdiction over Seven Arts." (Doc. 12-1 at 4:10).

Plaintiff responds that he has alleged sufficient facts to support "specific jurisdiction" in this forum. Defendant argues that Plaintiff purposefully directed its activities at Arizona by negotiating with an Arizona resident (DMX); purchasing the Master, which was created in Arizona; acquiring the Master from an Arizona studio; and commercially releasing the Master in Arizona. Plaintiff also alleges that Defendant knew its conduct would damage Plaintiff in Arizona. In support of this assertion, Plaintiff points to the letter its counsel sent to Defendants asserting ownership of the Master. Plaintiff finally asserts that his claims arise from Defendant's Arizona activities, and thus satisfy the "but for" test, because the claim would not have arisen but for "Defendant's contacts with Saltmine, its negotiations and legal agreements with DMX, an Arizona resident,… and its infringement and continued infringement of Plaintiff's copyright despite knowing that the copyright was owned by Plaintiff." (Doc. 14 at 8:21-26). Plaintiff also requests, as an alternative to denial of Defendant's motion, leave to conduct discovery regarding jurisdiction.

Defendant replies by arguing that Plaintiff has not pointed to any facts indicating that Defendant "took affirmative acts to avail itself of the protections of the forum state's laws." (Doc. 15 at 2:28-3:1). Defendant also disputes some of the facts asserted by Plaintiff. For example, Defendant states that when it acquired the Master from DMX, DMX was a resident of South Carolina. Additionally, Defendant asserts that it did not acquire the Master from Saltmine, but instead from Bodog Records[5] and Michery.

### C. Analysis

From the record currently before the Court, it is unclear whether Defendant has sufficient minimum contacts with Arizona to satisfy the requirements of specific jurisdiction. For example, the parties apparently disagree as to whether Defendant acquired the Master directly from Saltmine, an Arizona recording studio, or from another individual or entity unaffiliated with this state. Additionally, it is unclear whether Defendant knew about Plaintiff's claimed ownership of the Master, or knew that Plaintiff would suffer injury in Arizona if Defendant released the Master on the Album. These facts relate to whether Defendant "direct[ed] its activities or purposefully avail[ed] itself of the benefits afforded by th[is] forum's laws." *See Williams*, 851 F.3d at 1023.

Additional information regarding Defendant's contacts with this forum is required in order for this Court to determine whether it may properly exercise jurisdiction over Defendant. Thus, the Court will grant Plaintiff's alternative request for leave to conduct jurisdictional discovery. *See, e.g., Wake Up and Ball*, 119 F. Supp. 3d at 951 (granting jurisdictional discovery where factual disputes prevented Court from determining whether jurisdiction was proper). Though Plaintiff has focused his arguments in the briefing currently before the Court on specific jurisdiction, he has also requested leave to conduct limited discovery into whether the Court has general jurisdiction over Defendant.

---

[5] The Complaint does not mention Bodog Records. Bodog Records' relationship to the parties and involvement in the pertinent transactions is unclear.

Discovery into both types of jurisdiction will aid the Court in its determination and therefore will be permitted.

### III. Defendant's 12(b)(6) Motion

This Court cannot rule on Defendant's 12(b)(6) motion unless and until it determines that it may properly exercise jurisdiction over the Defendant. Thus, Defendant's motion to dismiss under 12(b)(6) will be denied without prejudice.

### IV. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 12) will be **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Notice of Motion to Dismiss (Doc. 11) will be **DENIED** as moot because it is duplicative.

**IT IS FINALLY ORDERED** that, by separate order, the Court will set a date for a Rule 16 Scheduling Conference in this matter.

**Dated** this 3rd day of July, 2017.

Honorable Diane J. Humetewa
United States District Judge